JOSEPH R. MANNING, JR. State Bar No. 223381
BABAK HASHEMI, State Bar No. 263494
**THE LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION**
4667 MacArthur Blvd., Suite 150
Newport Beach, CA 92660
(949) 200-8755 Phone
(866) 843-8308 Fax
ecf@manninglawoffice.com

Attorneys for Plaintiffs BRYAN M. PAVALKO and MONICA L. PAVALKO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA- SOUTHERN DIVISION

| | |
|---|---|
| BRYAN M. PAVALKO and MONICA L. PAVALKO,<br><br>Plaintiffs,<br><br>v.<br><br>SUNTRUST MORTGAGE, INC., a business entity form unknown, BANK OF AMERICA, N.A., a business entity form unknown, and DOES 1-100, inclusive,<br><br>Defendants. | CASE NO.: SACV13-01865 JLS (PLAx)<br><br>*[Assigned to the Honorable Josephine L. Staton]*<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' SUNTRUST MORTGAGE, INC. AND BANK OF AMERICA, N.A.'S, MOTION TO DISMISS COMPLAINT [F.R.C.P. 12(B)(6)]**<br><br>[Filed concurrently with Plaintiffs' Objection to Request for Judicial Notice]<br><br>DATE: FEBRUARY 7, 2014<br>TIME: 2:30 P.M.<br>CRTRM: 10A |

**TO ALL DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:**

Plaintiffs BRYAN M. PAVALKO and MONICA L. PAVALKO (collectively referred to herein as "Plaintiffs") hereby oppose Defendants' SUNTRUST MORTGAGE, INC. and BANK OF AMERICA, N.A. (collectively referred to herein as "Defendants") Motion to Dismiss Plaintiffs' Complaint for failure to state a claim.

## I. **INTRODUCTION**

Plaintiffs' Complaint alleges well-supported cognizable causes of action against

Defendants SUNTRUST MORTGAGE, INC. and BANK OF AMERICA, N.A. ("Defendants") for violations of California Civil Code §2923.6, negligence, violations of California Business and Professions Code §17200, *et seq.*, and demand for accounting.

## II. ARGUMENT

### A. Defendants' Motion to Dismiss is Without Merit

The Federal Rules simply require in the complaint a "short and plain statement of the claim showing the pleader is entitled to relief." [FRCP Rule 8 (a)(2)] In *Conley v. Gibson*, 355 U.S. 41 (1957), the United States Supreme Court noted that the Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which they base their claim. To the contrary, all the Rules require is 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiffs' claim is and the grounds upon which it rests."

In ruling on a motion to dismiss, the Court must accept all material allegations of fact alleged in the complaint as true and resolve all doubts in favor of Plaintiff. (*Pareto v. F.D.I.C.*, 139 F. 3d 696, 699 (9th Cir. 1998)). The Federal Rules simply require in the complaint a "short and plain statement of the claim showing the pleader is entitled to relief." [FRCP Rule 8 (a)(2)] Moreover, the Rules require a "short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

Motions to dismiss are disfavored, as there exists "'a powerful presumption against rejecting pleadings for failure to state a claim.'" *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quoting *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir.1985)). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*. In considering a motion to dismiss, a district court must take as true all well-pleaded allegations of material fact and must construe them in the light most favorable to the plaintiff. *Ileto v. Glock, Inc.*, 349 F.3d

1191, 1200 (9th Cir. 2003). A court also must take into account all inferences supporting the complaint that a trier of fact reasonably could draw from the evidence. See *Id*.

Even applying the standard set by the case of *Bell Atlantic Corporatin v. Twombly* 550 U.S. 544 (2007) which requires that complaint should have enough factual matter, not just labels, conclusions, and formulaic recitation of the elements of cause of action, the instant case has still sufficient and enough facts to state a claim of relief that is tenable on its face.

With regard to foreclosure-related case, the Ninth Circuit stated that "[c]omplaints need only allege facts with sufficient specificity to notify defendants of Plaintiffs' claims." *Balderas v. Countrywide Bank, N.A.*, 664 F.3d 787, 790 (9th Cir. 2011). "[S]o long as the plaintiff alleges facts to support a theory that is not factually implausible, the court's skepticism is best reserved for later stages of the proceedings when the Plaintiff's case can be rejected on evidentiary grounds." *Id*. at 791 Quoting *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008).

Here, Plaintiffs have stated and identified in the Complaint the Defendants and enumerated the different causes of action against them with sufficient factual support. A complaint may not be dismissed if there is any set of facts set forth in the complaint which will support a cause of action. When a Court rules on motion to dismiss, it must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the Plaintiffs. In fact, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." [*Bernheim v. Litt*, 79 F.3d 318(1996)].

### B. **Plaintiffs Have Alleged Sufficient Facts for a §2923.6 Claim**

Defendants have violated §2923.6 as SunTrust failed to re-evaluate Plaintiffs' application for a first lien loan modification after being notified of Plaintiffs' material change in their financial circumstances. Plaintiffs have had a material change in financial circumstances. Now, pursuant to the new California Homeowner's Bill of Rights, specifically *Civil Code* §2923.6, SunTrust is compelled to review Plaintiffs' modification

request. Moreover, Plaintiffs notified SunTrust of such change, as set forth in the Complaint.

The California Legislature, in enacting the HBOR, mandated pursuant to Civil Code §2923.6(g) the following:

> In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a ***material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.*** [Emphasis added.]

To protect lenders against borrowers who submit multiple first lien loan applications for the purpose of delay, HBOR excuses servicers from evaluating applications from borrowers who have already been evaluated or were afforded a fair opportunity to be evaluated prior to January 1, 2013. (See Cal. Civ. Code §2923.6(g)). However, the above exceptions do not apply if the borrower provides the servicer with documentation evidencing a "material change" in the borrower's financial circumstances since the borrower's previous application. (Cal. Civ. Code §2923.6(g)).

As alleged in the Complaint, **Plaintiffs have not been fairly evaluated** for a loan modification, **nor have they been afforded a fair opportunity** to be evaluated *and* there has been a **material change in Plaintiffs' financial circumstances**, and that change has been documented and submitted to SunTrust, the mortgage servicer. Had SunTrust not added an escrow account without notice to Plaintiffs, Plaintiffs would not have accrued any delinquent amount which Defendant SunTrust was attempting to add onto the back end of the loan. Accordingly, Plaintiffs were never afforded a fair opportunity to be evaluated and was never fairly evaluated.

Therefore, under Cal. Civ. Code §2923.6, Defendant SunTrust must evaluate Plaintiffs' application for a loan modification because Plaintiffs have not had their right to a fair evaluation prior to 2013.

In addition, as alleged in the Complaint, there has been a material change in Plaintiffs' financial circumstances since the last time they submitted an application for foreclosure prevention. Specifically, Plaintiffs' household income has decreased due to having to take out a loan of $25,000 for their son's education and therefore having to allocate a portion of their income towards these additional expenses. Plaintiffs' attorney documented the change in financial circumstances and submitted it to Defendants SunTrust in a letter dated October 25, 2013. (Complaint ¶¶56). Plaintiffs' counsel documented and submitted these changes to Defendants in a letter dated October 25, 2013 (Id. at ¶ ¶56, Exhibit A of Complaint).

Regardless of these facts, Defendant SunTrust has not agreed to review Plaintiffs' application for a loan modification and has advised that foreclosure proceedings will proceed as a Notice of Intent to Accelerate has already been issued. Therefore, Plaintiffs reasonably believe that Defendant SunTrust will soon record a Notice of Default before fairly evaluating them for a loan modification, as required under §2923.6.

Plaintiffs' first cause of action sufficiently alleges that SunTrust did and continues to violate Civil Code §2923.6. SunTrust was and currently is obligated under §2923.6 to review Plaintiffs for a loan modification. Now, pursuant to the new California Homeowner's Bill of Rights, SunTrust must review Plaintiffs for a foreclosure alternative and may not record a Notice of Default until they have been fairly evaluated and have exhausted an appeal of their written denial if applicable, as set forth in *Civil Code* §2923.6(c).

Accordingly, Plaintiffs properly pled a violation of Cal. Civ. Code §2923.6 and the motion to dismiss should be denied.

## PLAINTIFFS ARE NOT REQUIRED TO PROVE, OR EVEN ALLEGE TENDER

Defendants argue, erroneously, that Plaintiffs; claims fail because they have not tendered or alleged the ability to tender. This failure however is not fatal to this action. It is settled law in California that a tender need not be made where it would be inequitable to do so. This principle was established in *Humboldt Sav. Bank v. McCleverty,* 161 Cal. 285, 291 (1911), which held that "…it is certainly not the law that an offer to pay the debt must be made, where it would be inequitable to exact such offer of the party complaining of the sale." *Id.*; See also, *ING Bank v. Ahn,* 2009 WL 2803965, *2 (N.D. Cal.) (holding that dismissal was not required at the pleadings stage if there is a question regarding the plaintiff's ability to effectuate tender). Such discretion lies in a court's equitable powers, taking into consideration all the circumstances, including the nature of the violations and the borrower's ability to repay the proceeds. This Court can exercise its equitable discretion to allow an action to set aside a trustee's foreclosure sale to proceed in the absence of showing that one can make the tender.

Defendants fatally attempt to base the entire motion on their Tender argument. None of Plaintiff's causes of actions require tender. Even so, Defendants presents the "tender" argument as though it were absolute and without exception. This is not the state of the law. First, if the requirement of tender were an absolute rule, everyday homeowners would never be able to challenge even the most egregious foreclosure. This would be a grossly inequitable result and would permit entities to foreclose on properties with impunity.

The tender rule is not absolute and "'[a] tender may not be required where it would be inequitable to do so.'" *Onofrio v. Rice,* 55 Cal. App. 4th 413, 424 (1997) (quoting 4 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trust & Mortgages, ¶ 9:154) (affirming trial court's grant of relief to plaintiff on rescission claim despite plaintiff's failure to tender).

Based on substantially similar facts, in *Dimock v. Emerald Properties, LLC* (2000) 81 Cal. App. 4th 868, the Court of Appeal held that *tender is not required* when a trustee goes forward with a foreclosure sale without any legal authority to do so. In *Dimock*, even though the original trustee was substituted out for a new trustee, the original trustee conducted the sale anyway. The court held that the foreclosure sale was void and a complete nullity with no force and effect. Id. at 876. As a result, because the sale was void, the tender rule did not apply. Id. at 878.

Case law makes clear that a Plaintiff is only required to allege a credible offer of tender, not actually tender. *Alicia v. GE Money Bank,* No C 09-00091 SBA, 2009 WL2136969 at *3 (N.D. Cal. July 16, 2009) ("…debtor must allege a credible tender of the amount of the secured debt…"). Moreover, <u>tender is not required when the owner's action attacks the validity of the underlying debt because the tender would constitute an affirmation of the debt</u>. *Sacchi v. Mortgage Electronic Registration Systems, Inc.*, No. CV 11-1658 AHM, 2011 WL 2533029 at *16 (C.D. Cal. June 24, 2011) (emphasis added) citing *Onofrio v. Rice,* 55 Cal. App. 4th 413, 424 (1997) In light of the fact that Plaintiff have contested amount of the default and the legitimacy of the Defendant's claim to accurately credit Plaintiffs' mortgage payments, it would be unreasoned and inequitable to require Plaintiffs to actually tender the amount given that Plaintiffs disputes whether Defendants have actually and accurately credited all of Plaintiffs' mortgage payments. *See Onofrio Id.*

Furthermore, Civil Code § 3412 in like manner provides that "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may upon his application, be so adjudged, and ordered to be delivered up or canceled." *i.e. amount of delinquency on the NOD.* In accordance with the provisions of Cal. Civil code §1692, once the contract(s) has been found to be void and cancelled, the Plaintiff is entitled to restitution of all monies paid, including costs, interest and principal payments. Tender is <u>not a</u>

<u>condition</u> of restitution in this case, due to the bad faith impending trustee's sale. However, to the extent necessary without validation of the underlying debt, Plaintiff has the present ability to tender the indebtedness and hereby offer to tender such amount.

    1. <u>It is Inequitable To Require Tender in This Case</u>

Tender may not be required where it would be inequitable to do so, *Onofrio v. Rice* (1997) 55 C.A.4th 413, 424. Because the Subject Property was purchased with a "credit bid," the only tender that could be equitably required to put the credit bidder in a pre-sale condition is 1) cost of the trustee sale, 2) interest and fees, and 3) reinstatement of the preexisting debt which would still be serviced by the creditor but for the sale. (These fees are disputed and unjustified.)

Where, as here, it may be shown that a sale was knowingly wrongful and without right, equity <u>weighs heavily against requiring</u> the borrower to make a full tender of the challenged debt rather than what is required to put the creditor in a pre-sale position. Defendants will likely argue that the tender in these cases should not be the sale price, i.e., the amount required to put the Defendants in a pre-sale position, but the full amount of the debt.

As already stated herein, the tender rule does not apply to any of Plaintiffs' causes of action.

## C. <u>Plaintiffs Have Alleged Sufficient Facts for Negligence</u>

It cannot be argued that Defendants, Defendants had no duty of care. The rule that a lender does not have a duty to a borrower is only a "general rule," and only applies to situations where a lender plays its conventional role.

Defendants owe Plaintiffs a duty of care because of its unconventional relationship with Plaintiffs. Traditionally, a lender loaned money to a borrower and serviced the loan. Here, SunTrust's role is not "conventional" because SunTrust is not receiving the benefits of Plaintiffs' Note and Mortgage. Instead, SunTrust holds Plaintiffs' payments for the benefit of the investor. In addition, a bank is liable in negligence if it fails to <u>discharge its</u>

contractual duties with reasonable care. *Das v. PHH, N.A.*, 186 Cal.App. 4th 727, at 741 (2010) *citing Chazen v. Centennial Bank,* 61 Cal. App. 4th 532, 537 (1998). [*Emphasis Added*] SunTrust is liable for negligence because it failed to discharge its contractual duties with reasonable care.

Additionally, "[a] lender may owe a duty of care sounding in negligence to a borrower when the lender's activities exceed those of a conventional lender…" *Osei v. Countrywide Home Loans*, 692 F.Supp.2d 1240, 1249 (2010). One such instance is when the lender goes, "…beyond its role as a silent lender and loan servicer to offer an opportunity to plaintiffs for loan modification and to engage with them concerning [a] trial period plan." *Ansanelli v. JP Morgan Chase Bank*, N.A., 2011 WL 1134451, *7 (N.D. Cal. March 28, 2011).

Accordingly, by way of this Complaint, Plaintiffs have alleged that SunTrust went beyond its role as a conventional, silent loan servicer. "This is precisely beyond the domain of usual money lender." *See Anaselli*, 2011 WL 1134451, *7 (internal quotations omitted).

"[T]o recover on a theory of negligence, [p]laintiffs must prove duty, breach, causation, and damages." *Truong v. Nguyen*, 156 Cal. App. 4th 865, 875 (2007). "The existence of a duty of care owed by defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Sav. & Loan Ass'n,* 231 Cal. App. 3d 1089, 1095 (1991). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Id.* at 1096. "Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Wagner v. Benson*, 101 Cal. App. 3d 27, 35 (1980) (quoting *Connor v. Great W. Sav. & Loan Ass'n*, 69 Cal. 2d 850, 864 (1968)). Plaintiffs allege that Defendants "have a duty to exercise reasonable care and skill to follow California law with regard to enforcement of monetary obligations, and to refrain from taking or failing to take any action against Plaintiffs that they did not have legal authority to

do." Defendants attempt to argue that they are the mortgage servicer and that Plaintiffs fail to plead facts supporting a finding that Defendants' conduct exceeded the scope of a conventional mortgage servicer." However, the mishandling of the loan-modification applications and failure to afford a loan modification is "beyond the domain of a usual money lender".

Defendants attempt to argue that they are the mortgage servicer and that Plaintiffs failed to plead facts supporting a finding that Defendant's conduct exceeded the scope of a conventional mortgage servicer. However, the mishandling of a loan-modification application and failure to properly administer a loan modification review is well beyond the domain of a usual money lender or servicer.

Even when the lender is acting as a conventional lender, the no-duty rule is only a general rule. *Osei v. Countrywide Home Loans* (E.D.Cal.2010) 692 F.Supp.2d 1240, 1249.) As a recent federal case put it: "*Nymark* does not support the sweeping conclusion that a lender never owes a duty of care to a borrower. Rather, the *Nymark* court explained that the question of whether a lender owes such a duty requires 'the balancing of the "*Biakanja* factors." ' " (*Newson v. Countrywide Home Loans, Inc.* (N.D.Cal. Nov. 30, 2010 No. C 09-5288) 2010 U.S. Dist. Lexis 126383, at p. *15.) Or, in the words of an even more recent case, in each case where the general rule was applied to shield a lender from liability, "the plaintiff sought to impose upon the lender liability for activities *outside* the scope of the lender's conventional role in a loan transaction. It is against this attempt to expand lender liability (to that of, e.g., an investment advisor or construction manager) that the court in *Nymark* found a financial institution owes no duty of care to a borrower when its involvement in the loan transaction 'does not exceed the scope of its conventional role as a mere lender of money.' *Nymark,* 231 Cal.App.3d at 1096. *Nymark* and the cases cited therein do not purport to state a legal principle that a lender can never be held liable for negligence in its handling of a loan transaction within its conventional role as a lender of

money." (*Ottolini v. Bank of America* (N.D.Cal. Aug. 19, 2011 No. C–11–0477) 2011 U.S. Dist. Lexis 92900, at p. *16.) Plaintiffs urge this court to consider these observations.

In making its analysis regarding duty, the court in *Nymark* relied on a six (6)-part test, set forth in the California Supreme Court case *Biakanja v. Irving* (1958) 49 Cal. 2s 647, 650.

> In California, the test for determining whether a financial institution owes a duty of care to a borrower-client "involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him. [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the more blame attached to the defendant's conduct and, [6] the policy of preventing future harm." Citations omitted. *Nymark* at 1098 citing to *Biakanja* at 650.

In *Nymark*, Plaintiff alleged the bank negligently appraised the property and as a result, Plaintiff was harmed because the appraisal did not reveal certain problems. There, the court went through the six (6)-part test above, and determined the bank owed no duty to Plaintiff because as alleged by Plaintiff, the appraisal was undertaken to protect the bank's interest in the loan transaction, not Plaintiff's interest. (*Nymark*, at 1098.)

Here, Plaintiffs pass the six (6)-part test as set forth above:

[1]   The loan modification review process was intended to affect Plaintiffs.
[2]   It was foreseeable that Plaintiffs would be harmed by SunTrust's failure to properly review Plaintiffs for modification.
[3]   Plaintiffs have suffered injury because the arrearages increased the longer they were in modification review.
[4]   Because SunTrust told Plaintiffs they were eligible for a modification, which would in turn lower their monthly payments; Plaintiffs continued to apply for modification and wait, thus causing the arrearages to grow, while Defendants added unlawful charges to the loan balance.
[5]   It is morally wrong to deceive Plaintiffs to think they were eligible for a loan modification, and then simply have them resend the same documents, then not communicate the loan modification to Plaintiffs, simply for the bank's own financial gain.

[6]   By virtue of the fact that the Federal Government has enacted the National Mortgage Settlement, and the California Homeowners Bill of Rights, there is a public policy against Defendants' behavior.

Plaintiffs urge this Court to employ this six (6)-part test as set forth by the California Supreme Court and find that Defendants owed Plaintiffs a duty as set forth above.

Defendants not only created a special relationship by purportedly undertaking the task of a loan modification review, but assumed a duty to competently administer the application process which was improperly done in this case. Accordingly, Plaintiffs have alleged that Defendants went beyond its role as a conventional, silent loan servicer. "This is precisely beyond the domain of usual money lender." See *Anaselli*, 2011 WL 1134451, *7 (internal quotations omitted). This cause of action is sufficient.

Similarly, *Robinson v. Bank of America* (N.D. Cal. May 29, 2012 No. 12–CV–00494–RMW) 2012 U.S. Dist. Lexis 74212, p. *21, decided on a motion to dismiss, held that a bank went beyond its role as a "silent" lender in its dealings with plaintiff during loan modification negotiations. There, the bank was "alleged to have executed and breached the modification agreement, then engaged in a series of contradictory and somewhat misleading communications with plaintiff—in person, in writing, and by phone—regarding the status of his loan. Under such circumstances, it was entirely foreseeable that [the bank's] conduct could result in damage to plaintiff's credit rating or a decrease in the value of his home." (*Ibid.*; see also *Crilley v. Bank of America, N.A.* (D.Haw. Apr. 26, 2012 No. 12–00081) 2012 U.S. Dist. Lexis 58469 at pp. *5–12, 26 [duty of care owed where plaintiff and bank engaged in substantial negotiations regarding loan modification, finding potential liability based in part on "delays in the loan modification process"]; *Watkinson v. MortgageIT, Inc.* (S.D.Cal. June 1, 2010 No. 10–CV–327) 2010 U.S. Dist. Lexis 53540, pp. *23–24 [duty of care found where bank knowingly misstated borrower's income and value of property on loan application, and where borrower sought but was denied a loan modification]; *Garcia v. Ocwen Loan Servicing, LLC* (N.D.Cal. May 6, 2010 No. C–10–0290) 2010 U.S. Dist. Lexis

45375 at pp. *7–11 [plaintiff's allegations about loan modification application process sufficiently pled a duty under *Biakanja* factors]; but see, *Ottolini v. Bank of America, supra*, 2011 Dist. Lexis 92900 at pp. *18–19 [distinguishing *Ansanelli, supra*, 2011 U.S. Dist. Lexis 32350 where "the application for loan modification had not progressed to a concrete stage and ... there is no indication of the likelihood that such an application would have been granted"].) Therefore, any conclusion determining Defendant owed no duty to Plaintiffs is in error.

Defendants owed Plaintiffs a duty of care because of its <u>unconventional relationship</u> with Plaintiffs. Accordingly, Plaintiffs properly pled a viable claim for negligence, and the motion to dismiss should be denied.

### D. **Plaintiffs Have Alleged Sufficient Facts for a UCL (§17200) Claim**

The elements required to state a cause of action for Unfair Business Practices, Business & Professions Code §17200 ("UCL") are: (1) A business practice; (2) that is unfair, unlawful or fraudulent; and (3) authorized remedy. Bus. & Prof. Code §17200; *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 676; *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 317 (damages cannot be recovered, but instead injunctive relief and restitution compelling defendant to return money); William L. Stern, Bus. & Prof. C. §17200 Practice (The Rutter Group 2005) ¶7:116 et seq.; 5 Witkin, California Pro. (4th ed. 1997) Pleading, §§ 735.

To establish standing under Business & Professions Code §17200, Plaintiffs must make a twofold showing: they must demonstrate injury in fact and a loss of money or property caused by unfair competition (Bus. & Prof. Code §17204).

The Complaint adequately alleges Defendants engaged in unlawful, unfair and/or fraudulent business practices by alleging violations of Civil Code §2923.6 and that Defendants engaged in deceptive business practices with respect to Plaintiffs' loan, which caused Plaintiffs to suffer injury.

13

Case No. 13-cv-01865 JLS (PLAx)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1. **<u>Plaintiffs Have Alleged a Violation of §17200</u>**

Business & Professions Code §17200 does not proscribe specific activities, but broadly prohibits any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. Cal. Bus. & Prof. Code §17200. "Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition – acts or practices which are unlawful, or unfair, or fraudulent." *Shvarts v. Budget Group, Inc.* (2000) 81 Cal.App.4th 1153, 1157. In other words, a practice is prohibited as "unfair" or "deceptive" even if not "unlawful" and vice versa. *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 643-644 (2008). Any such act serves the basis for a claim of unfair competition. *Cal-Tech Comm'n's, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999); *In re Pomona Valley Med. Group*, 476 F.3d 665, 674 (9th Cir. 2007).

By defining "unfair competition" to include any unlawful act or practice, the UCL permits violations of other laws to be treated as independently actionable as unfair competition. *Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180. Virtually any law or regulation- federal or state, statutory or common law- can serve as predicate for a §17200 violation. Thus, if a business practice violates any law it also violates §17200 and may be redressed under that section. *People v. E.W.A.P., Inc.* (1980) 106 Cal.App.3d 315, 319.

The statute "has a broad scope that allows for 'violations of other laws to be treated as unfair competition that is independently actionable' while also 'sweep[ing] within its scope acts and practices not specifically proscribed by any other law.'" *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1122, (9th Cir.2009), quoting *Kasky v. Nike, Inc.* (2002) 27 Cal. 4th 939, 949. Therefore, even if the Court determines that one or more of Plaintiffs' other claims cannot stand alone, Plaintiffs' UCL cause of action can still survive.

JOSEPH K. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

The independent "unfairness" prong of the UCL is "intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud." *Podolsky v. First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 647, quoting *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1103. A practice is unfair if the court determines that the impact of the practice or act on its alleged victim outweighs the reasons, justifications, and motives of the alleged wrongdoer. *Id.* Unfair conduct under Section 17200 has been commonly defined as conduct that "offends an established public policy or… is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Scripps Clinc v. Superior Court* (2003) 108 Cal. App. 4th 917, 939.

A fraudulent practice under the UCL "require[s] only a showing that members of the public are likely to be deceived" and "can be shown even without allegations of actual deception, reasonable reliance and damage." *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 806, quoting *Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 838.

Here, a §17200 claim is appropriate as Plaintiffs have pled specific facts in support of this claim. As specifically alleged in the Complaint, Defendants through its authorized representatives, acted both "unfairly" and "unlawfully" by make false representations designed to deceive Plaintiffs and stating that the escrow account should never have been added to their mortgage account. (Compl., ¶47). Defendants "dual tracked" Plaintiffs toward foreclosure during the purported modification review in violation of the National Mortgage Settlement and §2923.6(c)(1). The court in *Jolly* concluded that allegations of "dual-tracking" can support an unfair business practices claim, even if the conduct occurred prior to "dual-tracking" violating California law. *Jolley,* 213 Cal.App.4th at 907-908.

Furthermore, Defendants acted "unfairly" and "unlawfully" by refusing to evaluate Plaintiffs for a loan modification in violation of §2923.6(g) after being notified of Plaintiffs' material change in circumstances.

The purpose of HBOR is to ensure that, as part of the non-judicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options offered by or through the borrower's mortgage servicer. See Civil Code §2934.4(a). However, Defendants offends public policy by engaging in a practice of failing to fairly evaluate or afford a fair opportunity to borrowers for loss mitigation options.

Defendants failed to evaluate Plaintiffs in good faith for a foreclosure prevention alternative in an effort to generate revenue from a non-performing mortgage by inducing Plaintiffs to go further behind and instructing Plaintiffs to submit and resubmit multiple loss mitigation applications and financial documents in order to prolong the "review" period and drive up the fees and costs for default-related services.

Additionally, the charging of unnecessary and unreasonable fees on Plaintiffs' loan by use of deceptive procedures and concealing the true character, quality, and nature of these assessments as alleged in the Complaint is a deceptive practice that results in injury to Plaintiffs and other similarly situated borrowers. Moreover, the pleaded facts as well as testimony and discoverable evidence will further a high level of deception in the course of Defendants's conduct and representations.

### 2. Plaintiffs Have Standing to Allege a UCL Claim

Plaintiffs have standing to assert this claim. Plaintiffs have specifically suffered injury in fact, including loss of equity in the home (by growth in amounts of delinquent interest, declining property value and late fees), costs and expenses related to protecting themselves, fees and costs, including, without limitation, attorneys' fees and costs and higher cost of obtaining credit due to the deterioration of credit scores.

Plaintiffs have relied to their detriment on incomplete and inaccurate disclosures, which led them to incur late fees, delinquent interest, legal costs, and precluded them from effectively transferring and/or encumbering the Subject Property. Plaintiffs have further suffered financial injuries as a result of Defendants's wrongful conduct relating to loss of

equity in the Subject Property. Such losses have been found sufficient to confer standing. See *Aron v. U-Haul Co. of California* 143 Cal.App. 4th 796, 802-3 (2006).

In addition, being charged marked-up and unnecessary fees constitutes injury in fact. (See *Hale v. Sharp Healthcare* (2010) 183 Cal. App. 4th 1373, 1383-1384, patient's UCL claim against hospital adequately alleged standing where plaintiff alleged she was promised services at regular rates but was charged excessive rates. Although plaintiff paid only $500 of her $14,448 bill; patient faced at least an imminent invasion or injury to a legally protected interest.) As alleged in the Complaint, Plaintiffs are unable to bring the loan current due to the unnecessary fees added to the loan balance.

Plaintiffs are also at risk of losing the home and reasonably believe that foreclosure is imminent. Risk of foreclosure constitutes injury in fact. See *Sullivan v. Washington Mutual Bank* (2009) WL 3458300 at *4-5 (N.D. Cal. Oct. 23, 2009) (concluding that the initiation of foreclosure proceedings put the plaintiff's interest in her property sufficiently in jeopardy to allege an injury under §17200).

Under the UCL "[a]n injury to a tangible property interest, such as money, generally satisfies the 'injury in fact' element for standing." ... "injury in fact" ... [means] ... "'an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" ... "'Injury-in-fact is not Mount Everest. "The contours of the injury-in-fact requirement, while not precisely defined, are very generous," requiring only that claimant "allege some specific, 'identifiable trifle' of
injury".'" *Hale*, supra, 183 CA4th at 1381-84 (internal citations omitted.)

The term "imminent" is defined as "ready to take place," "hanging threateningly over one's head," and "menacingly near." (*Id.* at 1384.) Further, being at risk of foreclosure would constitute injury in fact. See *Sullivan v. Wash. Mut. Bank, FA*, (2009) WL 3458300, at *4-5 (N. D. Cal. Oct.23, 2009) (concluding that the initiation of foreclosure proceedings put the plaintiff's interest in her property sufficiently in jeopardy

to allege an injury under § 17200); *Rabb v. BNC Mortgage, Inc.*, (2009) WL 3045812, at *2 (C.D.Cal. Sept. 21, 2009).

Plaintiffs have pled clear and convincing factual allegations demonstrating Defendants' unlawful, fraudulent or unfair business practices. Based on the facts pled, a trier of fact could find Defendants' failure to comply with its mandate under the HBOR and the National Mortgage Settlement to be contrary to public policy, immoral, unethical, oppressive, and substantially injurious to consumers, and therefore, a §17200 claim is appropriate as Plaintiffs properly pled claims for violations of HBOR and other meritorious causes of action in the Complaint. Through discovery, arguments including violation of §2923.6 and other unfair business practices will have additional factual support and are likely to lead to a decision in favor of Plaintiffs. Furthermore, Plaintiffs have sufficiently alleged they suffered injury-in-fact as a result of Defendants' unfair business practices.

Accordingly, Plaintiffs properly pled a viable claim for Business and Professions Code §17200, and the motion to dismiss should be denied.

### E. Plaintiffs are entitled to an Accounting

To state a claim for an accounting, a plaintiff must show "that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due that can only be ascertained by an accounting." *Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179.

A right to an accounting is derivative; it must be based on other claims. *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 593-594. Plaintiffs' Complaint alleges viable claims entitling Plaintiffs to an accounting. Specifically, Plaintiffs' cause of action for violation of Business & Professions Code §17200 alleges, among other things, that Defendants assessed Plaintiffs' account for marked-up and unnecessary fees purportedly incurred by Defendants for default-related services.

Defendants erroneously argues that Plaintiffs' claim for accounting must fail because a fiduciary duty does not exist. However, "[a] fiduciary relationship between the parties is not required to state a cause of action for accounting. All that is required is that some relationship exists that requires an accounting." *Teselle,* 173 Cal. App. 4th at 179.

"[T]he purpose of the accounting is, in part, to discover what, if any, sums are owed to the plaintiff, and an accounting may be used as a discovery device." *Id.* at 180. Here, by this cause of action, Plaintiffs allege that they are owed an amount of money and that such amount includes improper excess charges and fees imposed by Defendants, which fees are not allowed by law. As alleged in the Complaint, Defendants conceal the true character, quality and nature of their assessment of marked-up fees against Plaintiffs' account. (See, e.g., Compl. ¶¶115-117). Without an accounting, the actual amount of these fees and arrearages will remain unknown to Plaintiffs.

### III. CONCLUSION

Plaintiffs respectfully requests that the Court deny Defendants' Motion to Dismiss. Defendants persistently violated Civil Code §2923.6. Further, Defendants, by its conduct, engaged in unlawful, unfair or fraudulent business practices with respect to Plaintiffs' property and the subject loan, which caused Plaintiffs' injury. To the extent that the Court is inclined to grant this motion, Plaintiffs respectfully requests that the Court grant Plaintiffs leave to amend the Complaint to cure any deficiencies and add additional factual basis in support of their claims.

Dated: January 6, 2014

**Law Offices of Joseph R. Manning, Jr.
A PROFESSIONAL CORPORATION**

/s/ Joseph R. Manning, Jr.
Joseph R. Manning, Jr., Esq.
Attorneys for Plaintiffs

# PROOF OF SERVICE - CCP.1013A
## STATE OF CALIFORNIA, COUNTY OF ORANGE

I, the undersigned, am employed in the County of Orange, State of California. I am over the age of eighteen (18) years and not a party to the cause. My business address is 4667 MacArthur Blvd., Suite 150, Newport Beach, CA 92660.

On January 6, 2014, I served the true copies of the foregoing document described as **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT** on the interested parties in this action, addressed as follows:

**Served Electronically Via the Court's CM/ECF System:**

*Attorneys for Defendant Suntrust Mortgage Inc. and Bank of America, N.A.*
Bryan M. Leifer, Esq.
Akerma LLP
725 South Figueroa Street, 38th Floor
Los Angeles, CA 90017

I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this affidavit was executed on January 6, 2014.

                                            /s/ Katie Tribbey
                                            Katie Tribbey